**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, New York 10019
(212) 237-1000
Charles E. Simpson (CES-2130)

Attorneys for Appellants, Urban Communicators PCS
 Limited Partnership, *et al.*, Debtors-in-Possession

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

| | |
|---|---|
| URBAN COMMUNICATORS PCS LIMITED PARTNERSHIP, *et al.*, Debtors, | 08 Civ. 502 |
| | 08 Civ. 945 |
| | 08 Civ. 946 |
| Appellants. | 08 Civ. 947 (RWS) |
| -against- | |
| | USBC  98-B-47996 |
| | 98-B-47997 and |
| GABRIEL CAPITAL, L.P., | 98-B-10086 (REG) |
| Cross-Appellant. | <u>Jointly Administered</u> |

---------------------------------------------------------------x

---

### APPELLANTS' OPPOSITION BRIEF

---

**WINDELS MARX LANE & MITTENDORF, LLP**
Charles E. Simpson (CES-2130)
156 West 56th Street
New York, New York 10019
(212) 237-1000

Attorneys for Appellants, Urban Communicators PCS Limited
Partnership, *et al.*, Debtors-in-Possession

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Hufnagel v. George*, 135 F.Supp.2d 406 (S.D.N.Y. 2001) ................................................5

*In re Milham*, 141 F.3d 420 (2d Cir. 1998) ................................................7

*Thacker v. FCC* (In re MagnaCom Wireless, LLC), 2007 U.S.App. LEXIS 22151 9th Cir. Sept. 17, 2007 ................................................5

*Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156 (1946) ................................................7

*In re Venture Mortgage Fund, L.P.*, 245 B.R. 460 (Bankr. S.D.N.Y. 2000) ................................................5

## STATE CASES

*Fareri v. Rain's Intern, Ltd.*, 589 N.Y.S.2d 579 (2d Dep't. 1992) ................................................4

*Hammelburger v. Foursome Inn Corp.*, 437 N.Y.S.2d 356 (1981) ................................................5

*Hammond v. Marrano*, 451 N.Y.S.2d 484, 485 (App. Div. 4th Dep't. 1982) ................................................5

*New York Mortg. Co. v. Garfinkle*, 247 N.Y.S. 313 (1931) ................................................5

## FEDERAL STATUTES

11 U.S.C. § 506(b) ................................................3-4

28 U.S.C. § 158(a) ................................................3

**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, New York 10019
(212) 237-1000
Charles E. Simpson (CES-2130)

Attorneys for Appellants, Urban Communicators PCS
 Limited Partnership, *et al.*, Debtors-in-Possession

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

| | | |
|---|---|---|
| URBAN COMMUNICATORS PCS LIMITED PARTNERSHIP, *et al.*, Debtors, | : : : | 08 Civ. 502 08 Civ. 945 08 Civ. 946 |
| Appellants. | : | 08 Civ. 947 (RWS) |
| -against- | : : | USBC 98-B-47996      98-B-47997 and |
| GABRIEL CAPITAL, L.P., | : : | 98-B-10086 (REG) |
| Cross-Appellant. | : : | Jointly Administered |

------------------------------------------------------------x

Appellant, Urban Communicators PCS Limited Partnership ("UC-LP"), and Urban Comm-Mid-Atlantic, Inc. ("UC-MA") and Urban Comm-North Carolina, Inc. ("UC-NC"), Debtors-in-Possession (jointly referred to hereinafter, as the "Appellants" or "Debtors"), by their undersigned counsel, as and for their Opposition Brief and in furtherance of Appellants' appeal from the "Decision and Order on Gabriel Entitlement to Post-Petition Interest" of Honorable Robert E. Gerber, United States Bankruptcy Judge, So-Ordered December 11, 2007 ("Bankruptcy Court Order"), granting Gabriel Capital, L.P.'s ("Gabriel") motion for an award of pendency interest to the extent Gabriel's simple interest equivalent rate does not exceed 25%, respectfully represent as follows:

{10445295:1}                                                    2

## I.     BASIS OF APPELLATE JUSRISDICTION

This is an appeal from a final order of the United States Bankruptcy Court for the Southern District of New York. This Court has jurisdiction over this appeal (the "Appeal") pursuant to 28 U.S.C. § 158(a)(1).

## II.     STANDARD OF APPELLATE REVIEW

A district court reviews a bankruptcy court's conclusions of law de novo. The same standard of review applies to a bankruptcy court's conclusions on mixed questions of fact and law. *Citations omitted.*

## III.     BACKGROUND AND UNDISPUTED FACTS

The Background and Undisputed Facts contained in the Debtors' Appellant's Brief filed on February 27, 2008, is incorporated herein by reference.

## IV.     ARGUMENT

**The Bankruptcy Court Appropriately Exercised its
Discretion to Reduce the Rate of Interest on Gabriel's Secured
Claims to a Rate Below that which Renders UC-NC Solvent**

Gabriel, a creditor of UC-NC that the Bankruptcy Court determined was over-secured and, therefore, entitled to post-petition interest pursuant to 11 U.S.C. § 506(b), posits that the Bankruptcy Court erred by concluding that it had discretion to reduce the amount of interest provided by Gabriel's contract from a usurious rate to the lesser rate (25%) necessary to render UC-NC solvent in order to benefit UC-NC and its creditors.

Gabriel's argument in support of its position rests on its interpretation of the relevant case law that, in Gabriel's view, prohibits the Bankruptcy Court from reducing the interest accruing on the UC-NC note by a degree that would leave even a minimal amount available to pay UC-NC's other secured creditor and shareholders. Despite the clarity with which the Bankruptcy

{10445295:1}             3

Court articulated both the legal and equitable basis for its reduction of the interest rate on Gabriel's claim, Gabriel contends that the Bankruptcy Court abused its discretion in this instance by reducing the interest rate on the Note in contravention of 11 U.S.C. § 506(b).

While curiously neglecting to address those portions of the Bankruptcy Court Order concerning the usurious nature of Gabriel's loan, the sole basis of Gabriel's argument in its Appellant's Brief is that there is no equitable basis for reducing a lawful contractual interest rate prescribed by a contract. The Bankruptcy Court, however, in addressing its concerns with the usurious interest rate sought by Gabriel noted "that if Gabriel recovered the full interest it seeks, it would receive the simple interest equivalent of a very high 38% per annum on its loan." *Bankruptcy Court Order*, Pg. 28, Section III, 1st Paragraph.[1] Taking into consideration the fact that Gabriel's loan falls outside of the purview of New York's civil usury provisions, the Bankruptcy Court turned its attention to New York's criminal usury statute, Penal Law § 190.40. Noting that the criminal usury statute applies to loans from $250,000 up to $2.5 million, the Bankruptcy Court bifurcated the Debtor's obligations to Gabriel into that portion of the $9 million loan falling outside of the purview of Penal Law § 190.40 (the original $8 million Note) and that portion falling within the purview of Penal Law § 190.40 (the $1 million New Note and the PIK notes). The Bankruptcy Court then calculated that, at the very least, nearly 40% of the Debtor's entire indebtedness to Gabriel is subject to New York's Penal Law § 190.40, which provides in pertinent part:

> A person is guilty of criminal usury in the second degree when, not being authorized or permitted by law to do so, he knowingly charges, takes or receives money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per centum per annum or the equivalent rate for a longer or shorter period.

---

[1] Actually, the effective annual interest rate would go from 15% per annum to as high as 81% per annum in the later years.

{10445295:1}                                    4

Considering the foregoing, and in accordance with the Bankruptcy Court Order, a significant portion of the underlying contract that Gabriel seeks to have strictly enforced falls within the statutory parameters of New York's criminal usury statute and is, as a matter of law, unenforceable. *Fareri v. Rain's Intern, Ltd.*, 589 N.Y.S.2d 579 (2d Dep't. 1992) (Loans between $250,000 and $2.5 million that bear interest of more than 25% are against public policy and thus void *ab initio*.); *Hammelburger v. Foursome Inn Corp.*, 437 N.Y.S.2d 356 (1981) (A loan providing for interest that is violative of the criminal usury statute is void *ab initio*).

In light of the Bankruptcy Court's determination that a significant portion of Gabriel's loan was, in fact, usurious, the Bankruptcy Court could have, possibly should have, in its equitable discretion, imposed a far harsher penalty than merely reducing the interest on the loan so that it is in conformance with the usury statute. General Obligations Law Sec. 5-511 provides that all usurious contracts "shall be void" and directs that "the court shall declare the same to be void, and enjoin any prosecution thereon, and order the same to be surrendered and cancelled." This is true whether or not the lender knew that the rate of interest he was charging violated the Penal Law. *Hufnagel v. George,* 135 F. Supp. 2d 406 (S.D.N.Y. 2001). The application of New York's usury statute does not depend upon a finding of intent. *In re Venture Mortgage Fund, L.P.*, 245 B.R. 460 (Bankr. S.D.N.Y. 2000). A loan is usurious if the lender intends to take and receive a rate of interest in excess of that allowed by law even though the lender has no specific intent to violate the usury laws. *Hammond v. Marrano*, 451 N.Y.S.2d 484, 485 (App. Div. 4th Dep't. 1982). Furthermore, where a whole transaction is so tainted with usury as to make the transaction involved void, the entire mortgage should be discharged of record. *New York Mortg. Co. v. Garfinkle,* 247 N.Y.S. 313 (1931).

The Bankruptcy Court could have, at a minimum, excused 40% of the Debtor's obligation to Gabriel. However, the Bankruptcy Court exercised its discretion in a manner that it

believed was far less harmful to Gabriel by reducing its unlawful, usurious rate of interest to the maximum amount of interest allowable under New York State law, thus granting Gabriel the maximum amount of money it may legally receive under the Note.

Irrespective of the Bankruptcy Court's decision allowing Gabriel to collect pendency interest in an amount equivalent to a maximum effective rate of 25%, the Debtors maintain the position articulated in its Appellant's Brief, dated February 27, 2008. Briefly, it is the Debtors' position that no interest accrued on the Note during the period subsequent to the FCC's cancellation of the Licenses and the return of those Licenses several years later. Consistent with the Ninth Circuit's holding in MagnaCom[2], the Debtors posit that the Licenses were extinguished and had no value once the FCC cancelled them. As such, the Debtors interest in the Licenses and the proceeds therefrom was zero. Likewise, Gabriel had a security interest in the proceeds from Licenses that were extinguished and did not exist. The FCC, recognizing the impropriety of seeking interest on its claim for the period in which UC-NC was without the Licenses, waived the interest on their claim against UC-NC for the period that UC-NC was dispossessed of the Licenses. The Debtors maintain that the Bankruptcy Court erred in determining that Gabriel was consistently oversecured during this period. On the contrary, Gabriel's status as an oversecured creditor could not have been determined until proceeds in excess of the FCC's claim came into being. The 25% interest rate allowable on Gabriel's claim in accordance with the Bankruptcy Court Order should not have begun to accrue until proceeds in excess of the FCC's claim came into existence.

---

[2] Thacker v. FCC (In re MagnaCom Wireless, LLC), 2007 U.S. App. Lexis 22151 (9th Cir. Sept. 17, 2007).

{10445295:1}                                      6

## The court appropriately exercised its equitable discretion in reducing the rate of interest on Gabriel's claim

Gabriel has, on several occasions, contended that it is entitled to the full measure of interest provided under the terms of its Financing Agreements because section 506(b) unequivocally requires such. The Bankruptcy Court, however, took particular exception with Gabriel's reading of section 506(b), stating in the Bankruptcy Court Order that "Gabriel's presentation of those contentions is at best materially misleading, and the suggested conclusion is simply wrong. The contentions run exactly contrary to *Milham*, which...holds exactly the opposite."[3] *Bankruptcy Court Order*, fn. 63.

The Bankruptcy Court Order listed three factors that informed the exercise of its discretion which ultimately led to the reduction of interest on Gabriel's claim. First, the Bankruptcy Court took note of the effect that permitting an interest recovery at the full 38% simple interest equivalent average would have on the Debtors' estate and the remainder of its creditor body. The Bankruptcy Court acknowledged that this factor is a traditional basis for reducing a pendency interest award as a court is empowered to consider the balance of equities between creditor and creditor. *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156 (1946).

The second factor informing the Bankruptcy Court's exercise of its discretion was the level of interest requested by Gabriel, an interest rate the Bankruptcy Court deemed "very, very high..." The Bankruptcy Court noted that interest rates such as the rate sought by Gabriel have repeatedly been held to be unenforceable, further noting that the 38% simple interest equivalent on Gabriel's claim exceeds the highest interest rate ever approved in a reported bankruptcy case.

---

[3] *In re Milham*, 141 F.3d 420 (2d Cir. 1998) The *Milham* Court stated that section 506(b) does not reflect an entitlement of interest at the contractual rate and that unlike prepetition interest, pendency interest is not based upon contract. The Court further ruled that the appropriate rate of interest is within the limited discretion of the court.

{10445295:1}                                          7

Taking into account New York's criminal usury statute and the pubic policy considerations that the provision embodies, the Bankruptcy Court could not endorse the usurious rate of interest sought by Gabriel and consequently reduced the interest accordingly.

Gabriel takes particular exception with the Bankruptcy Court's consideration of what it refers to as "unique circumstances" which serve as the third factor used to inform the exercise of the Bankruptcy Court's discretion in this case. The Court, in the Bankruptcy Court Order, noted:

> "[T]he Debtors took the many steps necessary to protect their interest in the licenses, in this Court and in proceedings elsewhere- ultimately securing the value of the licenses in a process running on since 1998... If the Debtors, bankrolled by the Debtors' equity, had not continued that fight, Gabriel's collateral would be valueless, and Gabriel would have lost the entirety of its $9 million principal, along with all of the interest it now seeks to collect. Under Gabriel's argument, Gabriel would be the only beneficiary of that lengthy battle."

Despite the Bankruptcy Court's almost ten (10) years of involvement with the Debtors and this chapter 11 case, Gabriel continually minimizes the Debtors' management's operations/sales of assets and preservation of the estate through litigation and appeals to the U.S. Supreme Court. UC-NC was forced to fight the FCC at every stage of these proceedings, including the Debtors' involvement by way of submission of an amicus brief to the Supreme Court in the Nextwave chapter 11 case. Interestingly, despite the impact that an adverse ruling in the Nextwave case would have had on Gabriel's collateral, Gabriel apparently wrote off these loans and chose not to support the ultimately successful litigation which was financially supported solely by UC-NC's management, shareholders and limited partners, at substantial risk. Gabriel chose to remain silent during the pendency of those actions, choosing instead to chastise the Debtors for what it has conceitedly characterized as *de minimus* work subsequent to the these battles already having been fought.

The Debtors also vigorously marketed and sold their Licenses upon their return by the FCC and negotiated a settlement agreement with the FCC, which provided for the FCC's waiver of interest during the five (5) years that the FCC wrongfully held the licenses, in an effort to provide the estate with the funds to pay Gabriel, its sole remaining secured lender and the Debtors' shareholders. Gabriel is undoubtedly exercising selective amnesia by mischaracterizing the work orchestrated by management in this chapter 11 case and its direct benefit to Gabriel.

Gabriel's position with respect to the Debtors' equity receiving any payment is curious considering the fact that Gabriel receives 18% of any money paid to equity under a Security Purchase Warrant between Urban Communicators Limited Partnership and Gabriel executed at the time of the original transaction.

## CONCLUSION

**WHEREFORE**, the Appellants/Debtors respectfully request that the Court deny Gabriel Capital, L.P.'s appeal of the Bankruptcy Court's decision, and grant such further and other relief as is just and proper.

Dated: New York, New York
       March 13, 2008

**WINDELS MARX LANE & MITTENDORF, LLP**

By: ___/s/ Charles E. Simpson____
    **Charles E. Simpson (CES-2130)**
    **A Member of the Firm**

    156 West 56th Street
    New York, New York 10019
    (212) 237-1000

    Attorneys for Urban Communicators PCS Limited
    Partnership, *et al.*, Debtors-in-Possession